UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KEVIN SAMPSON,<br>  Plaintiff<br><br> v.<br><br>VILLAGE OF MATTESON, ILLINOIS, *et al.*,<br>  Defendant | No. 23 CV 00140<br><br>Judge Jeremy C. Daniel |

### ORDER

The defendant Michael Jones' Motion to Dismiss, [51] is GRANTED as follows:

Count VII, as asserted against the defendant Officers Lenoir and Sierra, along with the Cook County John and Jane Does, are severed as detailed below. The Clerk is DIRECTED to open a new matter containing these defendants.

Count I, as against defendants Mental Health Advisor Jane Doe, Officer Franco, Officer Wlodyga, and Sergeant Skinner; Count IV and Count VI, as asserted against defendants Cook County, Cook County John and Jane Does, and Cook County Sheriff Thomas Dart; and Count III, as asserted against Officer Mason are severed as detailed below. The Clerk is DIRECTED to open a new matter containing these defendants.

Count I and Count III, as asserted against defendants Investigator Shakur, and Investigator "Ski" are severed as detailed below. The Clerk is DIRECTED to open a new matter containing these defendants.

Count I and Count V, as asserted against defendants Cook County, Cook County Sheriff Thomas in his official capacity and Cook County John and Jane Does are severed as detailed below. The Clerk is DIRECTED to open a new matter containing these defendants.

The plaintiff's motion for leave to file a sur-reply [65] is GRANTED insofar as the court considered the arguments presented when preparing this order.

The plaintiff shall have until January 24, 2025, to file an amended complaint asserting claims against defendants retained in this matter: the Village of Matteson, Illinois, Matteson Police Chief Michael Jones, in his individual and official capacities,

and The Matteson John and Jane Does, plus St. James Hospital and Health Center and the St. James John and Jane Does.

**STATEMENT**

Plaintiff Kevin D. Sampson Jr. ("Sampson") is a prisoner in Cook County Jail. He brings this lawsuit against an extensive list of individuals, alleging a long history of mistreatment while incarcerated. The current operative complaint lists sixteen different named defendants and four separate groups of John Doe defendants. (R. ("SAC") 51.) One of the identified defendants, Village of Matteson Chief of Police Michael Jones ("Jones"), moves to dismiss Sampson's claims against him. (R. 52.)

Before reaching the merits of Jones' motion to dismiss, the Court must contend with the issue of improper joinder, also raised by Jones (R. 52 at 3.) The allegations in Sampson's operative complaint are not a cohesive narrative but a series of isolated vignettes. As such, the SAC is a paradigmatic example of a complaint that alleges defendant "A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). Joinder is appropriate when a "right to relief is asserted against [defendants] jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2)). However, "[u]nrelated claims against different defendants belong in different suits," *George*, 507 F.3d at 607. Accordingly, the Court will separate Sampson's SAC into claims arising out of five distinct series of occurrences and sever them appropriately.

**January 10-12, 2021 – Village of Matteson and St. James Hospital**[1]

On January 10, 2021, Sampson experienced a mental health crisis and was arrested following a standoff with the Matteson Police Department ("MPD"). (SAC ¶¶ 24–25.)[2] During the standoff, Sampson "clearly communicat[ed] suicidal tendencies" and stated he "was ready to die." (*Id.* ¶¶ 24, 26.) Sampson's relatives and his lawyer also informed police during the standoff that Sampson had a long history of mental illness and suicidal ideation. (*Id.* ¶¶ 26–29.) After Sampson's arrest, he was placed in a cell with "minimal supervision" and was provided a blanket. (*Id.* ¶ 33.) On January 12, 2021, Sampson attempted to hang himself using the blanket. (*Id.* ¶ 35.) Matteson Police Commander Aaron Dobrovits, and other John and Dane Doe Defendant MPD

---

[1] This description of the events underlying the plaintiffs' claims is drawn from the SAC and is presumed true for the purpose of resolving the pending motion. *Vimich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).
[2] For ECF filings, the Court cites to the page number(s) set forth in the document's ECF header unless citing to a particular paragraph or other page designation is more appropriate.

officers, discovered Sampson during a cell check and transported him to St. James Hospital. (*Id.* ¶ 36.)

At St. James Hospital, Sampson "pulled a cord from a machine and secreted it in his pants." (*Id.* ¶ 38.) Neither hospital staff nor MPD officers noticed the missing cord or searched Sampson before he was returned to his holding cell. (*Id.* ¶ 39–40.) Once back in the holding cell, Sampson tried to hang himself again using the stolen cord. (*Id.* ¶ 42.) MPD officers again discovered Sampson during his suicide attempt and transported Sampson back to St. James Hospital. (*Id.* ¶ 44–45.)

Sampson's asserted counts as to these events will be retained in this action, against the Matteson Defendants[3] and the St. James defendants.[4] These are: Count I, Failure to Provide Necessary Medical Care, and Count IV, Negligence, asserted against the Matteson Defendants, along with Count II, Medical Negligence, asserted against the St. James Defendants.

**September 20, 2022**

Sampson alleges that, while being held in the Cook County Jail, he was threatened by another inmate on September 20, 2022. (*Id.* ¶ 50.) He reported this threat to defendant Officers Lenoir and Sierra, who refused to move Sampson to another tier. (*Id.* ¶¶ 51–52.) At 2:34 a.m., Sampson was attacked and stabbed by two inmates. (*Id.* ¶ 55.) He was treated for injuries, including a stab wound, at Cermak Hospital. (*Id.* ¶¶ 56–57.) From these events, Sampson brings Count VII, Failure to Protect, against defendant Officers Lenoir and Sierra, along with Cook County John and Jane Does. (SAC at 21.) These claims shall be severed into a separate action.[5]

**November 16, 2022**

Sampson alleges that the guards in his tier of the Cook County Jail were callous and abusive following an inmate suicide on November 16, 2022. (*Id.* ¶ 58.) Sampson and other inmates discovered the body of a fellow inmate hanging in the shower of their tier around midnight; however, it took until 2:30 a.m. for prison officials to respond, allegedly because the officer responsible for the tier that night was asleep. (*Id.* ¶¶ 58–59.) Sampson received a psychological evaluation following the incident, at which he requested a transfer to another tier. (*Id.* ¶¶ 61–63.) However, the mental health advisor conducting the evaluation allegedly failed to follow policy and pass the

---

[3] Village of Matteson, Illinois, Matteson Police Chief Michael Jones, in his individual and official capacities, and The Matteson John and Jane Does. (SAC ¶ 6.)

[4] St. James Hospital and Health Center and the St. James John and Jane Does. (SAC ¶¶ 20–21.)

[5] The Court is mindful of the potential burden severance may place on recruited counsel. Recruited counsel shall notify the Court whether he intends to represent the plaintiff in the severed actions, with the understanding that the Court views his continued representation of the plaintiff in this case as sufficient to fulfill his obligations as a member of the trial bar.

3

request along to the relevant staff—instead she told Sampson she had no power over placement. (*Id*. ¶ 64.)

Sampson also alleges that he made repeated requests for transfer out of his tier to multiple guards on or after November 16, 2022, but was refused and mocked with "hanging related jokes." (*Id*. ¶ 65.) Sampson further alleges he, along with other inmates, were made to clean the scene of the hanging. (*Id*. ¶ 66.) On November 18, 2022, Sampson suffered a breakdown after which he was sent to Cermak Hospital for treatment and evaluation. (*Id*. ¶ 67.) When returned to Cook County Jail, he again requested transfer out of his cell tier and further psychological evaluation, but was threatened with solitary confinement and retaliated against. (*Id*. ¶¶ 67–71.) One of the officers, Wlodyga, is alleged to have retaliated against Sampson and other inmates by denying them access to a microwave to warm up dinner; when the inmates objected, Officer Wlodyga called for backup. (*Id*. ¶¶ 70–71.) One of the responding officers, Officer Mason, allegedly used excessive force on Sampson; Sampson was then placed into solitary confinement for several days. (*Id*. ¶¶ 67–68.) Following this incident, Officer Mason repeatedly threatened Sampson with promises of further mistreatment. (*Id*. ¶ 74.)

From these events, Sampson brings Count I, Failure to Provide Necessary Medical Care, against Mental Health Advisor Jane Doe, Officer Franco, Officer Wlodyga, and Sergeant Skinner, Count IV, Negligence, and Count VI Rehabilitation Act violations, against Cook County, Cook County John and Jane Does, and Cook County Sheriff Thomas Dart, and Count III, Excessive Force, against Officer Mason. (SAC at 14–18.) These claims shall be severed into a separate action.

**April 24, 2024**

Sampson alleges that, on April 24, 2024, Cook County Investigators Shakur and "Ski" conducted an "unnecessarily rough body search," injuring Sampson; he contends that he has testicular pain and ulnar nerve damage as a result of that body search to this day. (*Id*. ¶¶ 75–79.) From these events, Sampson brings Count I, Failure to Provide Necessary Medical Care and Count III, Excessive Force, against defendants Investigator Shakur, and Investigator "Ski." (SAC at 17–18.) These claims shall be severed into a separate action.

**July through September of 2024**

Sampson alleges mistreatment from July through September of 2024, after Sampson had spinal surgery. (*Id*. ¶ 80.) Sampson reports that, one day, he fell and Cook County Jail Officers responded by mocking him for putting on "an 'Academy Award Winning Act'" and refusing to place him in his prescribed wheelchair. (*Id*. ¶ 81.) The prescribed wheelchair later malfunctioned and Cook County Jail staff refused to replace the wheelchair, or push Sampson in it. Sampson alleges he injured his finger while

4

attempting to move himself in the faulty wheelchair. (*Id*. ¶¶ 82–84.) From these events, Sampson brings Count I, Failure to Provide Necessary Medical Care, and Count V, Americans with Disabilities Act violations, against defendants Cook County, Cook County Sheriff Thomas in his official capacity and Cook County John and Jane Does. (SAC at 14–18.) These claims shall be severed into a separate action.

**Jones' Motion to Dismiss**

The Court will now address the merits of Jones' Motion to Dismiss. A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint, not the merits of the allegations. *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). To overcome a motion to dismiss, a complaint must contain sufficient factual allegations to state a claim for relief that is plausible on its face, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and raises the right to relief above a speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

**Count I**

Jones first argues Count I, Failure to Provide Necessary Medical Care, should be dismissed because it fails to state a claim against him. (R. 52 at 2–3.) Indeed, despite the arguments of the parties over the merits of Count I, (*see* R. 62 at 4), Sampson does not bring a claim against Jones for Count I as far as the Court can tell. (*See* SAC at 14 (listing defendants for Count I, not including Jones).) Nevertheless, the Court will address the parties' arguments. To start, the SAC contains no allegations that Jones was personally involved in the alleged failure to provide Sampson with necessary medical care in the form of a "suicide watch" or "continued personal observation." (*See* SAC ¶ 90 (pleading action and inaction only by Matteson John and Jane Does).) Therefore, there is no claim against Jones in his personal capacity. *See Kuhn v. Goodlow*, 678 F.3d 552, 556 (7th Cir. 2012) (quoting *Wolf–Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir.1983) (personal capacity claims require "caus[ing] or participat[ing] in an alleged constitutional deprivation.")

To the extent Sampson intended to bring a claim against Jones in his official capacity, the Court notes that a suit against a municipal official in an official capacity[6] is properly a suit against his employer, here, the Village of Matteson, which is listed as defendant for Count I. *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985). Therefore, Sampson must plead that the alleged constitutional violation resulted from a "policy or custom." *Orozco v. Dart*, 64 F.4th 806, 823 (7th Cir. 2023). There are no such allegations in the SAC, and accordingly Count I as to Jones in his official capacity will be dismissed. Because this claim is functionally a claim against the Village of Matteson, Count I is dismissed as to that defendant as well.

---

[6] Known as a "*Monell*" claim. *Monell v. New York City Dept. of Social Services*, 426 U.S. 658, 692-94 (1978).

**Count IV**

Jones argues Count IV should be dismissed because he is immune from Sampson's negligence claims under the Illinois Tort Immunity Act, 745 ILCS 10/4-103. (R. 52 at 5–6.) The Act provides, in relevant part, that "a public employee is [not] liable for failure to provide sufficient equipment, personnel, supervision or facilities therein [a jail]. Nothing in this Section requires the periodic inspection of prisoners." 745 ILCS 10/4-103. Sampson argues that his claim nevertheless survives because the Tort Immunity Act does not apply if Jones' conduct was "willful and wanton." (R. 62 at 11–12, (citing *Widdows v. Jackson Cnty.*, 2024 WL 3636664, at *9–10 (S.D. Ill. Aug. 2, 2024), (citing *Williams v. City of Chicago*, 1995 WL 88926, at *5 (N.D. Ill. Mar. 2, 1995))).) Jones replies that the Illinois Supreme Court has "unequivocally held" that the "willful and wanton" exception to immunity only applies if included in the statutory provision, and such an exception is plainly absent from § 4-103. (R. 63 at 9.) Although Jones is correct about the text and meaning, of § 4-103, this is not dispositive.

Neither *Widdows* nor *Williams* involved § 4-103. Instead, these cases concern § 4-105 of the Tort Immunity Act, which does contain a "willful and wanton" exception for a "public employee" who "knows from his observation of conditions that the prisoner is in need of immediate medical care" and "fails to take reasonable action to summon medical care." 745 ILCS 10/4-105; *see also Williams*, 1995 WL 88926 at *5 ("failure to check, monitor and safeguard [the plaintiff], despite their alleged knowledge of the likelihood that [the plaintiff] would commit suicide while in custody, arguably illustrates Defendants' willful and wanton disregard of [the plaintiff]'s need for immediate medical attention."); *Widdows*, 2024 WL 3636664, at *9–10 (citing *Williams*).

However, Sampson does not bring a negligence action based on a failure to provide medical attention. Count IV is pled as a failure to monitor claim. (SAC ¶¶ 113–14.) As presented, this claim must be dismissed because § 4-103 immunizes Jones from such claims. Dismissal of Count IV is also proper because it is brought under the wrong law; it was brought under 20 Ill. Adm. Code 701.130(a), (SAC ¶ 113), which applies to County Jails, when it should have been brought under the provision which applies to Municipal Jails. *See* 20 Ill. Admin. Code 720.60. As such, this claim is not viable as currently pled.

**Leave to Amend**

In his opposition to Jones' Motion to dismiss, Sampson seeks leave to amend in the event the defendants' motion is granted. (R. 62 at 13.) "The court should freely give leave to amend when justice so requires." *Runnion ex rel. v. Girl Scouts of Greater Chi. and Nw. Ind.*, 786 F.3d 510, 519 (7th Cir. 2015) (citation omitted). After an initial complaint is dismissed, leave to amend is appropriate "unless it is *certain* from the

face of the complaint that any amendment would be futile." *Id.* at 519–20 (emphasis in original) (citation omitted).

Leave to amend is appropriate here for both Counts I and IV. Although the operative complaint is Sampon's fifth, this is the first complaint that has been subjected to a motion to dismiss. (*See generally* R. 1; R. 8; R. 10; R. 29; SAC.) The Court is also mindful that Sampson's prior four complaints were prepared by Sampson, a prisoner, without the aid of counsel. Sampson is now represented by recruited counsel, who is allowed one additional opportunity to prepare properly formatted allegations. (R. 39.)

Jones' Motion to Dismiss is granted, the non-Matteson and St. James defendants are severed as detailed above, and Sampson shall have until January 24, 2025, to file a Third Amended Complaint.

Date: December 20, 2024

JEREMY C. DANIEL
United States District Judge

7