UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KEVIN SAMPSON,<br>   Plaintiff<br><br>  v.<br><br>VILLAGE OF MATTESON, ILLINOIS, *et al.*,<br>   Defendants | No. 23 CV 140<br><br>Judge Jeremy C. Daniel |

## ORDER

The Matteson defendants' motion to dismiss [82] is granted as to Count I alleged against Matteson Police Chief Michael Jones in his individual capacity. The motion is denied on as to all Counts alleged against all other Matteson defendants. The Franciscan defendants' motion to dismiss [84] is denied. All defendants have until June 11, 2025, to answer the Third Amended Complaint.

## STATEMENT

The plaintiff, Kevin Sampson., Jr., brings this lawsuit stemming from events which occurred over January 10–12, 2021, after he was taken into custody and experiencing a mental health crisis. (R. 80 (Third Amended Complaint ("TAC")).) The crux of his allegations is that the defendants failed to provide him with proper medical care and adequate supervision while he was in their custody, leading to two suicide attempts in slightly more than 24 hours. (*Id.*)

Sampson names as defendants two separate groups of parties. First, he alleges a 42 U.S.C. § 1983 claim (Count I) and a state law negligence claim (Count III) against the Village of Matteson, Illinois, Matteson Police Chief Michael Jones, in his individual and official capacities, and various Matteson Police Department Officers as John and Jane Doe defendants (collectively, "Matteson" or "the Matteson defendants"). (*Id.* ¶¶ 4–7.)[1] He also alleges a medical negligence claim (Count II) against Franciscan Hospital Alliance, Inc. d/b/a Franciscan Health Chicago Heights and various John and Jane Doe health care providers employed by or affiliated with Franciscan Hospital Alliance, Inc. (collectively "Franciscan" or "the Franciscan defendants"). (*Id.*

---

[1] For ECF filings, the Court cites to the page number(s) set forth in the document's ECF header unless citing to a particular paragraph or other page designation is more appropriate.

¶¶ 8–9.) The Matteson and Franciscan defendants separately moved to dismiss the claims against them. (R. 82; R. 84.)

The Court will first summarize the factual allegations from the Third Amended Complaint, then address Matteson's motion as to Count I, before addressing the overlapping arguments from both motions to dismiss as to whether any statutes of limitations are tolled, and then address Matteson's motion as to Count III.

**Factual Allegations**[2]

On January 10, 2021, Sampson suffered a "mental breakdown" and "lost sanity," leading to a domestic dispute. (TAC ¶ 10.) The Matteson Police Department ("MPD") responded to the incident and a standoff ensued. (*Id.* ¶ 11.) During the standoff, Sampson's mother, his uncle (a psychiatric nurse), and his attorney all travelled to the scene. (*Id.* ¶¶ 12, 15, 16.) His mother talked with Sampson by phone. (*Id.* ¶ 13.) When Sampson stated he "was ready to die," she communicated this to MPD officers on the scene. (*Id.* ¶¶ 12–13.) Sampson's uncle and his attorney also told MPD officers that Sampson "suffered from mental illness and suicidal ideations" and had been recently released from a ten-day mental health evaluation. (*Id.* ¶¶ 15, 17, 18.) Sampson eventually surrendered and was taken into custody. (*Id.* ¶ 23.)

After his arrest, Sampson was taken to the Matteson Jail. (*Id.* ¶ 25). Even though officers at the jail knew Sampson was at heightened risk for suicide, he was placed in a cell with an open "'chuck hole'"[3] and provided a blanket. (*Id.* ¶¶ 28–32.) On January 12, between 4:00 a.m. and 4:50 a.m., Sampson "used the blanket . . . to attempt suicide by hanging himself from his assigned holding cell's 'chuck hole.'" (*Id.* ¶ 39.) Sampson was discovered at 4:50 a.m. during a cell check and taken to Franciscan Hospital (*Id.* ¶¶ 39–40.)

At Franciscan, hospital employees determined Sampson "presented a high suicide risk," but nevertheless left him alone long enough for him to remove a cord from a machine in his room and hide it in his pants. (*Id.* ¶¶ 57, 62.) Neither hospital staff nor MPD officers noticed the missing cord or searched Sampson before he was returned to the Matteson Jail and placed back in his holding cell. (*Id.* ¶¶ 64–68.) Once back in the holding cell, Sampson tried to hang himself using the stolen cord. (*Id.* ¶ 71.) MPD officers again discovered Sampson during his suicide attempt and transported Sampson to Franciscan Hospital. (*Id.* ¶ 72.)

---

[2] This description of the events underlying the plaintiffs' claims is drawn from the complaint and is presumed true for the purpose of resolving the pending motion. *Vimich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

[3] "'Chuck hole'" is the colloquial name for the small latch on a holding cell door that can be opened to provide food and other necessities through." (TAC ¶ 28 n.1.)

Sampson did not gain a full "comprehension" of the events of January 10–12, 2021 "until long after he began receiving psychiatric treatment and appropriate [antipsychotic] medications at Cook County Jail." (*Id.* ¶¶ 74–76.)

**Matteson's Motion to Dismiss Count I**

Matteson moves to dismiss Count I as alleged against the Village of Matteson and Chief of Police Michael Jones in his official and individual capacities. (R. 82.) The Court starts with the individual claim in Count I against Chief Jones, which the Court previously dismissed because Sampson did not allege any involvement by Jones in the observation or care of Sampson. (R. 73 at 5.) This defect is not fixed in the TAC, which does not state a claim against Jones in his personal capacity because it alleges no conduct by Chief Jones. *See Kuhn v. Goodlow*, 678 F.3d 552, 556 (7th Cir. 2012) (quoting *Wolf–Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir.1983)) (personal capacity claims require "caus[ing] or participat[ing] in an alleged constitutional deprivation.")

Turning to the claim against Jones in his official capacity, the Court notes that this is properly a claim against Jones' employer, the Village of Matteson, which is also identified as a defendant for Count I. *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985). Sampson must plead that the alleged constitutional violation resulted from a "policy or custom." *Orozco v. Dart*, 64 F.4th 806, 823 (7th Cir. 2023). He clears this bar. Sampson alleges that Chief Jones did not properly train his officers in suicide prevention measures. (TAC ¶¶ 31–36.) He further alleges that this failure to train is why he was repeatedly left alone and unmonitored in a holding cell, was given a blanket, and was not searched after being hospitalized for attempted suicide. (*Id.*) True, Sampson's failure to train claim is not well stated, but he is not, at this stage, required to plead "legal theories or cases or statutes, but merely to describe his claim briefly and simply." *Shah v. Inter-Cont'l Hotel Chi. Operating Corp.*, 314 F.3d 278, 282 (7th Cir. 2002). Here, Sampson has done so. Matteson's motion to dismiss is granted as to Count I against Chief Jones in his individual capacity, but denied as to Count I against Chief Jones in his official capacity and the Village of Matteson.

**Tolling the Statute of Limitations**

Matteson's motion to dismiss Count III and Franciscan's motion to dismiss Count II both turn on whether Sampson's claims are time-barred; the Court will address them together. (*See* R. 82 at 7; R. 84 at 4.) Sampson's negligence claim against the Matteson defendants has a one-year statute of limitations, 745 ILCS 10/8-101, and his medical negligence claim against the Franciscan defendants has a two-year statute of limitations, 735 ILCS 5/13-212(a). Neither was timely brought. Sampson filed his first complaint in this case on January 9, 2023, nearly two years after the incidents in question. (R. 1.) And the Franciscan defendants were not added to the case until September 30, 2024. (R. 51.) However, this is not the end of the matter. Statutes of limitation are tolled when the plaintiff is "under a legal disability," and do not resume

3

running until "the disability is removed." 735 ILCS 5/13-211. Sampson alleges that he was under a legal disability due to his mental health crisis on January 10, 2021, up to, at the latest, when he filed his original complaint on January 9, 2023. (R. 90 at 8; R. 91 at 10–12). Sampson admits that exactly when he was no longer under a legal disability is an open question of fact. (R. 91 at 12.) The Court agrees that if and when Sampson was under a legal disability is, at this stage, a factual question that cannot be resolved on a motion to dismiss. Dismissing claims at this early stage is only appropriate where "it is clear from the face of the . . . complaint that it is hopelessly time-barred." *Cancer Found., Inc. v. Cerberus Capital Mgmt., LP,* 559 F.3d 671, 675 (7th Cir. 2009). That is not the case here, and Matteson's and Franciscan's motions to dismiss based on time bars are denied at this stage.

**Matteson's Motion to Dismiss Count III**

The Matteson defendants move to dismiss Count III, arguing that the Tort Immunity Act, 745 ILCS 10/4-105, immunized them from Sampson's negligence claim. Sampson responds that the Tort Immunity Act contains an exception for "willful and wanton" conduct, such as leaving a clearly suicidal inmate unmonitored. (R. 91 at 14); *see also Williams v. City of Chicago,* 1995 WL 88926, at *5 (N.D. Ill. Mar. 2, 1995) ("[F]ailure to check, monitor and safeguard [the plaintiff], despite their alleged knowledge of the likelihood that [the plaintiff] would commit suicide while in custody, arguably illustrates Defendants' willful and wanton disregard of [the plaintiff]'s need for immediate medical attention.") This is exactly the kind of conduct Sampson alleges. (TAC ¶¶ 58–72.) Accordingly, Matteson's motion to dismiss Count III is denied.

Date: May 20, 2025

JEREMY C. DANIEL
United States District Judge